IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN MEDICAL TECHNOLOGIES, INC., )
   17595 Cartwright Road )
   Irvine, CA 92614-5847, )
           Plaintiff, )
      v. ) Civil Action No._____
MICHAEL O. LEAVITT, )
   Secretary of Department of )
   Health and Human Services )
   200 Independence Avenue, SW )
   Washington, D.C. 20201 )
           Defendant. )

## COMPLAINT

1. This is an action for judicial review of a series of unlawful and retaliatory actions by contractors acting on behalf of the Secretary of the United States Department of Health and Human Services ("HHS"), which actions culminated in a final decision of the Secretary denying Plaintiff's claims for Medicare reimbursement for medically necessary products provided to Medicare beneficiaries.

2. As a result of the illegal conduct by the Secretary's contractors, Plaintiff has been intentionally deprived of all administrative appeal rights.

3. Plaintiff is entitled to relief in this action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et. seq., including without limitation 5 U.S.C. §§ 704 and 706.

## JURISDICTION AND VENUE

4. The Court has jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiff also is entitled to relief in this matter pursuant to the Administrative Procedure Act, 5 U.S.C. § 551 et seq., including without limitation 5 U.S.C. § 704. This case arises under the laws of the United States, and Plaintiff has no administrative or other remedies available to it.

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (e).

## PARTIES

6. Plaintiff American Medical Technologies, Inc. ("AMT") is a subsidiary of a privately held corporation, Gordian Medical Inc., organized and existing under the laws of the State of Nevada. AMT has its principal place of business at 17595 Cartwright Road, Irvine, California 92614-5847.

7. AMT is currently a Medicare enrolled supplier in good standing, furnishing Medicare beneficiaries with wound care supplies through a delivery/shipping service. AMT furnishes composite dressings, which are generally used as primary or secondary dressings on wounds, and other wound care supplies to Medicare beneficiaries throughout the country. AMT is the largest supplier of non-bordered composite dressings in the country and, upon information and belief, receives the majority of reimbursements for this particular item from the Medicare program.

8. Defendant Michael O. Leavitt is the Secretary of the Department of Health and Human Services. In that capacity, he is responsible for the conduct and policies of HHS, including the conduct and policies of the Centers for Medicare and Medicaid Services ("CMS") and its contractors. He is sued in his official capacity.

## THE MEDICARE PROGRAM

9. The Medicare Act was established under Title XVIII of the Social Security Act (the "Act"), 42 U.S.C. §§ 1395 – 1395ggg, and provides payment for the provision of covered medical care services, equipment, and supplies to eligible aged and disabled persons.

10. Part B of the Medicare Act, 42 U.S.C. §§ 1395j – 1395w-4, provides supplementary medical insurance for covered medical services and covered medical supplies, including Durable Medical Equipment, Prosthetics, Orthotics and Supplies ("DMEPOS"). Composite dressings are items of DMEPOS.

11. Claims for DMEPOS items and services are submitted to one of four Durable Medical Equipment Medicare Administrative Contractors, commonly referred to as "DME-MACs" (formerly known as Durable Medical Equipment Regional Carriers ("DMERCs")) that are agents of CMS. The geographic jurisdictions of the DME-MACs are fixed by CMS and whether a claim falls under their purview depends upon the residence of the Medicare beneficiary on whose behalf a claim for payment is submitted. Pursuant to contracts between CMS and the individual DME-MACs, Medicare claims are processed by the following DME-MACs in their respective jurisdictions: (a) NHIC, Inc. – Jurisdiction A; (b) National Government Services/AdminaStar Federal – Jurisdiction B; (c) CIGNA Government Services – Jurisdiction C; and (d) Noridian Government Services – Jurisdiction D. The DME-MACs process claims and are not responsible for developing coverage guidelines or policies.

12. In addition to DME-MACs, Durable Medical Equipment Program Safeguard Contractors ("DME PSCs") also contract with CMS and help administer the Medicare program. DME PSCs are responsible for creating Medicare coverage guidelines, formulating Local Coverage Determinations (with CMS's approval), and conducting medical review/utilization

review of claims within their respective jurisdictions. There are currently three DME PSCs: (a) TriCenturion – Jurisdictions A and B, Dr. Paul J. Hughes, Medical Director; (b) TrustSolutions, L.L.C. – Jurisdiction C, Dr. Adrian M. Oleck, Medical Director; and (c) IntegriGuard, L.L.C. – Jurisdiction D, Dr. Mark D. Pilley, Medical Director.

13.  Pursuant to Title II, subtitle F of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320d-2, Congress required the Secretary to adopt and implement standards and requirements for coding systems to facilitate the electronic transmission of certain health information.

14.  On August 17, 2000, CMS published regulations (45 C.F.R. § 162.1002) to implement the HIPAA requirement for standardized coding systems. It established the Healthcare Common Procedure Coding System ("HCPCS") Level II codes as the standardized coding system for describing and identifying health care equipment and supplies in health care transactions that are not otherwise identified by HCPCS Level I, CPT codes. HCPCS is the means by which DMEPOS items and services are identified for Medicare billing, among other functions.

15.  The Statistical Analysis Durable Medical Equipment Regional Carrier ("SADMERC") is a national entity that also provides services under contract to, and is an agent of, CMS. The SADMERC HCPCS Unit offers guidance to manufacturers and suppliers on the proper use of the HCPCS, the means by which DMEPOS items and services are identified for Medicare billing. Additionally, the SADMERC performs a variety of national pricing functions for DMEPOS services, assists CMS with the DMEPOS Fee Schedules, and analyzes DMEPOS fees to identify unreasonable or excessive reimbursement amounts. CMS instructs manufacturers and suppliers to contact the SAMDERC HCPCS Unit to obtain proper billing

codes for DMEPOS items and determination of proper billing identification codes for new products or items.

16. Medicare payment for DMEPOS items and services is currently based on a fee schedule payment methodology, pursuant to section 1834 of the Act. 42 U.S.C. § 1395m. Fee schedule payment amounts for DMEPOS are the same for all items included in a HCPCS code, varying only slightly by geographic area.

## FACTUAL BACKGROUND

17. AMT is a Medicare supplier of wound care supplies, including, but not limited to, non-bordered composite dressings, which generally are wound care dressings that do not contain a built-in adhesive border. Plaintiff primarily furnishes wound care supplies to residents of long term care facilities. Plaintiff files claims with several CMS authorized contractors for the processing and reimbursement of claims for supplies that are furnished to beneficiaries under Part B of the Medicare program.

18. The non-bordered composite dressings furnished by Plaintiff are manufactured by MPM Medical, Inc. ("MPM") and Medline Industries, Inc. ("Medline").

19. MPM and Medline independently requested and received separate coding decisions from the SADMERC regarding the appropriate HCPCS codes to use for non-bordered composite dressings for purposes of Medicare billing, as required by CMS mandate.

20. The SADMERC determined that the non-bordered composite dressings manufactured by MPM and Medline met the description for non-bordered composite dressings as defined in the DMERC Medical policy for Surgical Dressings, in December 2004 and April 2006, respectively. Accordingly, the SADMERC assigned the non-bordered composite dressings to the following HCPCS Codes: (a) A6200 for Composite dressing, pad 16 sq. in. or

less, without adhesive border; (b) A6201 for a Composite dressing, pad size more than 16 sq. in. or less than 48 sq. in., without adhesive border; and (c) A6202 for a Composite dressing, pad size more than 48 sq. in., without adhesive border.

21. Pursuant to the SADMERC's decisions, AMT has submitted claims for non-bordered composite dressings for reimbursement under Medicare Part B with HCPCS codes A6200, A6201, and A6202.

22. Shortly after it began to submit claims under these HCPCS codes, the DME-MACs began denying large numbers of claims submitted by AMT due to a purported lack of medical necessity. For example, between September 1, 2004 and August 1, 2005, thousands of AMT's claims were denied based upon an alleged lack of medical necessity. AMT appealed these determinations and the vast majority of these cases were overturned on appeal by Administrative Law Judges ("ALJs"). For example, Administrative Law Judge Alexander Weir III, of the Social Security Administration, has adjudicated 11,874 of AMT's claims and three (3) overpayment cases containing multiple claims, with a reversal rate of approximately 98%. The HHS Office of Medicare Hearings and Appeals has also adjudicated 26,373 of AMT's claims with a 98% reversal rate. A small number of claims were not reversed because AMT was unable to produce all of the medical records for the beneficiaries at issue.

23. The DME PSC Medical Directors have provided testimony at these ALJ hearings through various means, including in person, by telephone, or by letter. Their testimony has consistently been rejected by the ALJs.

24. Upon information and belief, the DME PSC Medical Directors, faced with the prospect of continuing reversals in the administrative appeal process, decided collectively to devise a strategy that would allow them to deny AMT's claims while shielding their decisions

from any administrative review. This decision had several components: changing the definition of composite dressings; invalidating HCPCS codes A6200, A6201, and A6202; and denying reimbursement for these claims under a technical classification and thereby refusing to grant an administrative remedy to suppliers whose claims for such codes have been denied.

25. First, the DME PSCs, without authority, purported to change the definition of "composite dressings". As discussed above, the DME PSCs are responsible, in part, for creating Medicare coverage guidelines and policies, but are not responsible for defining the products that qualify for HCPCS codes.

26. In September 2006, two contractors and agents of CMS, TriCenturion, the Region A/B DME PSC, and Palmetto GBA, a former DMERC, issued bulletins pursuant to which they purported to revise the definition of composite dressings. The change was stated to be effective for claims with dates of service on or after October 1, 2006. In March 2007, the other DME PSCs followed suit and notified the supplier community through a Policy Article about the alleged revisions to the definition of composite dressings, with a retroactive effective date of January 2007. CMS contractors use a Policy Article as a mechanism to inform the supplier community about certain changes to coverage guidelines for Medicare covered items within their respective jurisdictions. The revised definition required, for the very first time, that a composite dressing have a physical adhesive border.

27. Prior to January 2007, the term "composite dressings" was defined as follows by the DMERC Medical policy for Surgical Dressings:

> Composite dressings (A6200-A6205) are products combining physically distinct components into a single dressing that provides multiple functions. These functions must include, but are not limited to: (a) a bacterial barrier, (b) an absorptive layer other than an alginate or other fiber gelling dressings, foam, hydrocolloid, or

hydrogel, and (c) either a semi-adherent or non-adherent property over the wound site.

28. Effective January 2007, the DME PSC's Policy Article contained the following definition for composite dressings:

> Composite dressings (A6200-A6205) are products combining physically distinct components into a single dressing that provides multiple functions. These functions must include, but are not limited to: (a) *a physical (not chemical) bacterial barrier that is present over the entire dressing pad and extends out into the adhesive border*, (b) an absorptive layer other than an alginate or other fiber gelling dressing, foam, hydrocolloid, or hydrogel, and (c) either a semi-adherent or nonadherent property over the wound site.
>
> Codes for composite dressings without adhesive border (A6200, A6201, and A6202) are invalid for claim submission.

29. The second major way in which the DME PSCs have attempted to shield their decisions from administrative review is to unilaterally invalidate HCPCS codes A6200, A6201, and A6202.

30. Although the SADMERC had previously indicated that non-bordered composite dressings sold by Plaintiff were appropriately classified by HCPCS codes A6200, A6201, or A6202, the Policy Article at issue indicates that codes for composite dressings without adhesive border A6200, A6201, and A6202 would be invalid for claim submission.

31. In response to the announced invalidation of these codes, AMT contacted the Coverage and Analysis Group ("CAG") within the Office of Clinical Standards and Quality of CMS. In turn, CAG requested that the Medical Directors of the DME PSCs provide an explanation as to why the HCPCS codes were invalidated. According to the Medical Directors, who include Drs. Paul Hughes, Mark Pilley and Adrian Oleck, they did not invalidate the HCPCS codes or eliminate coverage of non-bordered composite dressings, but decided that non-

bordered dressings no longer met the definition of "composite dressings." In fact, the Medical Directors had changed the definition and unilaterally invalidated HCPCS codes A6200, A6201, and A6202. There are no other products that are currently on the market that fit the revised definition of these codes.

32. During this time, AMT made several telephone inquiries to the CMS HCPCS Unit, including the HCPCS Coordinator, who confirmed that HCPCS codes A6200, A6201, and A6202 were in fact still valid for claim submission.

33. According to CMS's Healthcare Common Procedure Coding System (HCPCS) Level II Coding Procedures, requests for coding revisions should be made to CMS. Anyone, including the DME-MACs, can submit a request for modifying the HCPCS Level II national code set. The procedures indicate that a request for coding revisions should be sent to the Center for Medicare Management within CMS recommending the modification of a code. There are three types of coding revisions to the HCPCS codes that can be requested, including, but not limited to, revising the language used to describe an existing code.

34. According to these procedures, when a recommendation for revisions to the HCPCS is received, it is reviewed at a regularly scheduled meeting of the CMS HCPCS Workgroup. The HCPCS Level II Coding Procedures indicate that the CMS Workgroup is an internal workgroup comprised of representatives of the major components of CMS, the Medicaid State agencies and the SADMERC. Importantly, according to CMS' HCPCS Level II Coding Procedures, the "CMS HCPCS Workgroup is responsible for making the final decisions pertaining to additions, deletions, and revisions to the HCPCS codes," not the DME PSCs. The CMS HCPCS Workgroup reviews all requests for coding changes and makes final decisions regarding the annual update to the national codes. The SADMERC participates in this process

by representing Medicare program operating needs with input from the four Medicare contractors that have responsibility for processing DMEPOS claims for the Medicare program.

35. The HCPCS Level II Coding Procedures state that the CMS Workgroup applies certain criteria to determine whether there is a demonstrated need for a new or modified code or the need to remove a code. According to the procedures, when an existing code adequately describes the item in a coding request, then no new or modified code is established. An existing code describes products with (a) functions similar to the item in the coding request and (b) no significant therapeutic distinctions from the item in the coding request. The procedures further provide that when an existing code describes products that are almost the same in function with only minor distinctions from the item in the coding request, the item in the coding request may be grouped with that code and the code descriptor modified to reflect the distinctions.

36. Upon information and belief, the DME PSCs did not submit to the CMS Workgroup a formal request to change the definition of HCPCS codes A6200, A6201, and A6202 prior to the DME PSCs' unilateral change in definition of such codes. In addition, the DME PSCs apparently did not adhere to the criteria outlined in the HCPCS Level II Coding Procedures.

37. The DME PSCs have acted in willful disregard of CMS procedures regarding the change in definition and invalidation of HCPCS codes.

38. Based upon the revised definition, if a composite dressing does not have an adhesive border, then it does not qualify as a "composite dressing" and will therefore, not be reimbursed under HCPCS codes A6200, A6201, or A6202.

39. There is no medical justification for the change in definition. The DME PSCs seem to suggest that a composite dressing must have an adhesive border in order to maintain a

bacterial barrier. However, this reasoning is completely flawed in that the lack of a built-in adhesive border does not compromise the bacterial shield of a composite dressing. AMT obtained several medical opinions from nationally respected wound care experts pointing out the flaw in this reasoning and provided such opinions to the CAG and the DME PSC Medical Directors for review.

40. In contradiction to the position apparently adopted by the DME PSC Medical Directors, all of these clinical experts agreed that the bacterial shield of a composite dressing is not compromised by the lack of an adhesive border. In fact, all of these medical experts generally concluded that the adhesive borders are provided primarily as a means of convenience to minimize the need for other forms of securement during application of the dressing. According to the clinical experts, non-bordered composite dressings generally contain an absorbent layer placed on a moisture barrier film backing. This layer is of equal or greater importance in maintaining the bacterial barrier as are the absorptive properties of the dressing in controlling exudate and reducing the climate for bacterial proliferation.

41. CAG ignored the expert medical opinions provided by AMT.

42. The DME PSCs' unilateral decision to change the definition of composite dressings in spite of the expert medical opinions provided by AMT and to invalidate the codes at issue bypassed both the SADMERC and the CMS HCPCS Workgroup and thus failed to ensure balanced, rationally-based decision making.

43. The DME PSCs were required to follow established CMS guidelines in order to revise and invalidate HCPCS codes A6200, A6201, and A6202.

44. After the Policy Article was issued regarding the change in definition of composite dressings, Plaintiff continued to submit claims for reimbursement containing HCPCS codes A6200, A6201, and A6202 after the definition for composite dressings was revised.

45. Plaintiff has been denied reimbursement totaling $741,442 for the period October 1, 2006 through October 31, 2007. The number of claims denied during this time period is 1,714.

46. Beginning December 1, 2007, the Medicare contractors' processing of the Plaintiff's claims for non-bordered composite dressings has become chaotic among Jurisdictions:

- Jurisdiction A processes claims containing non-bordered composite dressings normally with no reimbursement determination distinction made among dressings.

- Jurisdiction B splits the claims containing non-bordered composite dressings into the following two segments: (1) a segment with only non-bordered composite dressings; and (2) a segment containing all other items. The segment containing only the non-bordered composite dressings is denied using an "invalid HCPCS code" explanation, indicating that there are no further appeal rights for the determination. The segment containing the remaining items is processed normally.

- Jurisdiction C summarily rejects any claim containing a non-bordered composite dressing using an "invalid HCPCS code" explanation and completely denying the claim access into the processing system. Without even a rudimentary processing and reimbursement determination, there can be no administrative appeal because the claim is deemed not to exist.

- Jurisdiction D processes claims containing non-bordered composite dressings normally with no distinction made regarding reimbursement determinations among dressings.

47.     The third major way in which the DME PSCs have attempted to shield their decisions from administrative review is to deny Plaintiff any administrative remedy to appeal its claims for non-bordered composite dressings.

48.     As indicated above, Jurisdiction B denied Plaintiff's claims for non-bordered composite dressings containing HCPCS codes A6200, A6201, and A6202.  Plaintiff's requests were denied with code MA130, indicating that such claims contained "incomplete and/or invalid information, and no appeal rights are afforded because the claim is unprocessable."  Plaintiff filed requests for redetermination of the denied claims.  Plaintiff's claims were again denied and Plaintiff was informed that no administrative appeal remedy was available.  Jurisdiction C has also failed to provide Plaintiff with an administrative appeal remedy because it has denied Plaintiff's claims for non-bordered composite dressings access into the processing system.

## COUNT I

### (Invalidity of Agency Action Based on Lack of Observance of Procedure
### 5 U.S.C. §§ 706(2)(A), (D))

49.     The allegations contained in paragraphs 1 - 48 above are realleged and incorporated by reference herein.

50.     Defendants were not authorized under HCPCS Level II Coding Procedures to unilaterally invalidate or revise the definition of HCPCS codes for submission of claims under the Medicare program.

51.     Defendants' invalidation of HCPCS codes is contrary to established CMS HCPCS Level II Coding Procedures, and is therefore unlawful pursuant to 5 U.S.C. §§ 706(2)(A), (D).

52.     The DME PSCs failure to follow established HCPCS Level II Coding Procedures in order to invalidate and revise the definition of HCPCS codes A6200, A6201, A6202

constitutes invalid agency action based on lack of observance of procedure pursuant to 5 U.S.C. §§ 706(2)(A), (D).

53. Plaintiff is therefore requesting this Court to conclude that Defendants' revision and invalidation of HCPCS codes is not authorized under CMS's established guidelines and an order preventing Defendants from further implementation of such revisions and invalidation of HCPCS codes A6200, A6201, and A6202.

## COUNT II
### (Invalidity of Agency Action Under 5 U.S.C. § 706)

54. The allegations contained in paragraphs 1 - 53 above are realleged and incorporated by reference herein.

55. Defendant's purported change in the definition of "composite dressings" without following established HCPCS Level II Coding Procedures is arbitrary and capricious agency action.

56. Defendant's subsequent invalidation of HCPCS codes A6200, A6201, and A6202 is contrary to established HCPCS Level II Coding Procedures and is therefore invalid agency action.

57. Defendant's establishment of new substantive standards of payment and eligibility for the provision of non-bordered composite dressings to Medicare beneficiaries without following CMS's HCPCS Level II Coding Procedures is arbitrary and capricious, an abuse of discretion and is therefore unlawful.

58. Defendant's denial of Plaintiff's claims for alleged technical reasons is arbitrary and capricious and an abuse of discretion.

59. Defendants' failure to provide an administrative remedy is without observance of procedure, is not in accordance with law and is therefore unlawful. Generally, there are five

levels in the Medicare Part B appeals process. The levels include the following: (a) First Level of Appeal - Redetermination by a Medicare carrier, fiscal intermediary, or Medicare Administrative Contractor ("MAC"); (b) Second Level of Appeal - Reconsideration by a Qualified Independent Contractor ("QIC"); (c) Third Level of Appeal - Hearing by an Administrative Law Judge in the Office of Medicare Hearings and Appeals; (d) Fourth Level of Appeal - Review by the Medicare Appeals Council; and (e) Fifth Level of Appeal - Judicial Review in Federal District Court. *See generally*, 42 C.F.R. §§ 405.801 - 405.877 (2007).

60. The Defendant has denied Plaintiff its right to exhaust its administrative remedies. Defendant's action is arbitrary and capricious and not in accordance with the law.

61. Defendant has intentionally acted in ways to arbitrarily deny Plaintiff's claims for non-bordered composite dressings without justification.

62. Plaintiff has no other adequate remedies available to redress Defendants' failure to provide an administrative remedy for Plaintiff's denied claims for non-bordered composite dressings. 5 U.S.C. § 704.

63. Plaintiffs are entitled to an order requiring CMS and its contractors to follow established CMS HCPCS Level II Coding Procedures to revise and invalidate a HCPCS code and payment on its denied claims as a result of this unlawful revision and invalidation.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs respectfully request as relief in this action that the Court:

64. Enter an order declaring that Defendants' revision and invalidation of HCPCS codes A6200, A6201, and A6202 is not authorized under established HCPCS Level II Coding Procedures and is null and void and of no effect.

65. Order the Defendants to process and reimburse Plaintiff's claims for composite dressings that were denied for technical reasons.

66. In the alternative to number 64 and 65, order the Defendant to provide an administrative appeal remedy for Plaintiff's claims that were denied for technical reasons.

67. Enter an order preventing the Defendant from further implementation of such revisions and invalidation of HCPCS codes A6200, A6201, and A6202 without following CMS's established HCPCS Level II Coding Procedures.

68. Declare that the SADMERC definition of composite dressings that existed prior to September 2006 be followed by the Defendant.

69. Enjoin the Defendants from initiating overpayment demands based upon reimbursement resulting from claims containing HCPCS codes A6200, A6201, and A6202 that were processed and paid.

70. Award plaintiffs such other relief as the Court may deem just and proper.

Respectfully submitted,

Frederick Robinson
D.C. Bar. No. 367223
Lori-Ann S. Bellan
D.C. Bar No. 463480
FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Avenue N.W.
Washington, D.C. 20004
(202) 662-0200

Attorneys for Plaintiff

Dated: February 25, 2008

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

AMERICAN MEDICAL TECHNOLOGIES, INC.
17595 Cartwright Road
Irvine, CA 92614-5847

## DEFENDANTS

MICHAEL O. LEAVITT
SECRETARY OF DEPARTMENT OF HEALTH AND HUMAN SERVICES
200 Independence Avenue, SW
Washington, DC 20201

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF — Orange
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Frederick Robinson
Lori-Ann S. Bellan
FULBRIGHT & JAWORSKI, L.L.P.
801 Pennsylvania Ave, N.W.
Washington, DC 20004

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
⦿ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ◌ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ⦿ C. Administrative Agency Review
☒ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)   OR   ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255*<br><br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ○ H. *Employment Discrimination*<br><br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ○ I. *FOIA/PRIVACY ACT*<br><br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ○ J. *Student Loan*<br><br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ○ K. *Labor/ERISA (non-employment)*<br><br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ○ L. *Other Civil Rights (non-employment)*<br><br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ○ M. *Contract*<br><br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ○ N. *Three-Judge Court*<br><br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⦿ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
This is an action for judicial review filed pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. 551, including Sections 704 and 706.

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ _____   Check YES only if demanded in complaint  JURY DEMAND: YES ☐  NO ☒

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE February 25, 2008   SIGNATURE OF ATTORNEY OF RECORD  *[signature]*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.