UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN MEDICAL TECHNOLOGIES, INC., )<br><br>Plaintiff, )<br><br>v. )<br><br>MICHAEL O. LEAVITT, Secretary, U.S. Department of Health and Human Services, )<br><br>Defendant. ) | Case No. 1:08-cv-00319 (JDB) |

**DEFENDANT'S MOTION TO DISMISS**

Defendant Michael O. Leavitt, the Secretary of Health and Human Services, by and through his undersigned counsel, respectfully moves this Court pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss this action for lack of subject matter jurisdiction. The basis for the instant motion is set forth in the accompanying Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss. A proposed Order is attached.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR
United States Attorney
D.C. Bar No. 498610

_____/s/_____
CHRISTOPHER B. HARWOOD
Assistant United States Attorney
United States Attorney's Office
        for the District of Columbia
555 Fourth Street, N.W.
Washington, DC 20530
(202) 307-0372

                                        _____/s/_____
                                        GERARD KEATING
                                        Attorney
                                        U.S. Department of Health and
                                                Human Services
                                        Office of the General Counsel
                                        Room 5309 Cohen Building
                                        330 Independence Ave., S.W.
                                        Washington, D.C. 20201
                                        (202) 619-3377
                                        Facsimile: (202) 401-1405

                                        Counsel for Defendant

OF COUNSEL:

THOMAS R. BARKER
Acting General Counsel

JANICE L. HOFFMAN
Associate General Counsel

MARK D. POLSTON
Deputy Associate General Counsel
        for Litigation

ANDREW S.M. TSUI
Attorney

U. S. Department of Health
        and Human Services

                                        -2-

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN MEDICAL TECHNOLOGIES, INC., | ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:08-cv-00319 (JDB) |
| | ) |
| MICHAEL O. LEAVITT, Secretary, U.S. Department of Health and Human Services, | ) ) ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

### INTRODUCTION

Plaintiff American Medical Technologies, Inc. ("Plaintiff" or "the supplier") is a

Medicare supplier of "non-bordered composite dressings." Plaintiff challenges steps taken by

various Medicare contractors to require an adhesive border for composite dressings and to

designate certain billing codes invalid for purposes of Medicare claims submission. Plaintiff

alleges subject matter jurisdiction solely under the federal question statute, 28 U.S.C. § 1331.

However, the Medicare statute, 42 U.S.C. §§ 405(h) and 1395ii, expressly bars federal question

jurisdiction, and requires Plaintiff to exhaust available administrative appeals remedies and

obtain a final decision of the Secretary before filing suit in federal district court under 42 U.S.C.

§§ 405(g), 1395ff. But Plaintiff nowhere alleges that it has even filed an administrative appeal of

the matters raised in the Complaint, much less that it has obtained the administrative hearing and

final decision of the Secretary that is required for judicial review under the Medicare statute's

exclusive grant of subject matter jurisdiction.

The Supreme Court has recognized a limited exception to § 405(h)'s bar of federal question jurisdiction "where application of § 405(h) would not simply channel review through the agency, but would mean no review at all." Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1, 19 (2000). This narrow exception clearly does not apply here because Plaintiff can raise all aspects of its claims through the Medicare statute's administrative and judicial review mechanism. In taking the actions challenged by Plaintiff, the Medicare contractors directed suppliers to use alternative billing codes for non-bordered composite dressings. If Plaintiff were to submit Medicare reimbursement claims under the alternative billing codes, it would receive an "initial determination" for each benefit claim, which it could then challenge through the mandatory administrative and judicial review process. 42 U.S.C. § 1395ff(a), (b)(1); 42 C.F.R. § 405.904(a)(2). By contrast, if Plaintiff were allowed to evade § 405(h)'s preclusion of federal question jurisdiction, it would be improperly rewarded for failing to abide by the administrative and judicial review scheme required by Congress.

Judicial review of Plaintiff's claims under the Medicare statute would require a final decision of the Secretary following an administrative hearing. 42 U.S.C. § 1395ff. But, as stated above, Plaintiff does not even allege that it requested an administrative hearing, much less that it obtained a final decision of the Secretary following such hearing, on the matters raised in the Complaint. Since the final decision requirement of § 1395ff is jurisdictional and the Secretary has not waived exhaustion of administrative remedies, the Medicare statute cannot provide subject matter jurisdiction until after Plaintiff pursues its claims through the entire, multi-tiered administrative appeals process and secures a final decision of the Secretary after a hearing.

Moreover, Plaintiff's challenge to the actions of the Medicare contractors is centered on

-2-

conflicting medical opinions, the kind of dispute for which the administrative process is especially well-suited. Thus, requiring exhaustion of administrative remedies would further the interests of administrative finality and judicial economy, in addition to enforcing the statutory requirement that parties obtain a final decision of the Secretary after an administrative hearing prior to seeking judicial review under the Medicare statute.

## STATUTORY AND REGULATORY BACKGROUND

1.      The Medicare statute, 42 U.S.C. § 1395 et seq., sets forth a federal health insurance program for the elderly and disabled. Under Medicare's original, fee-for-service program, Part A authorizes payments for covered inpatient hospital services and other institutional provider services, and is funded by payroll taxes. Id. §§ 1395c, 1395d, 1395i. This case arises under Part B, which is a voluntary program subsidized by enrollee premiums and appropriated monies. Id. §§ 1395j, 1395o, 1395r, 1395t. Part B enrollees receive supplementary medical insurance for "medical and other health services," which include physician services and some durable medical equipment ("DME"), prosthetics, orthotics, and supplies (collectively, "DMEPOS"). Id. §§ 1395k(a)(1), 1395m(j)(5), 1395x(s)(1), (2)(A), (6), (8), & (9). See also 42 C.F.R. Part 410 (scope of Part B benefits). Certain surgical dressings are among the medical supplies that potentially qualify for Part B coverage. 42 U.S.C. §§ 1395m(j)(5)(D), 1395x(s)(5); 42 C.F.R. § 410.36(a)(1).

However, while the statute may generally allow coverage of a given type of medical or other health service, a specific service furnished would be covered only if the particular service is not otherwise excluded from coverage. 42 C.F.R. § 410.12(a). The statute includes a coverage exclusion provision of general applicability, which bars payment for all items and services that

-3-

"are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." 42 U.S.C. § 1395y(a)(1)(A). See also id. § 1395y(a)(1)(B)-(22) (specific exclusions of coverage). The Secretary has broad authority to explicate the "not reasonable and necessary" coverage exclusion and other coverage provisions in case-specific adjudications or through generally applicable rules that may be established by notice and comment rulemaking or in less formal guidance. See Heckler v. Ringer, 466 U.S. 602, 617 (1984). A "national coverage determination" ("NCD") may be issued, which is "a determination by the Secretary with respect to whether or not a particular item or service is covered nationally." 42 U.S.C. § 1395ff(f)(1)(B). In addition, a Medicare contractor may issue a "local coverage determination" ("LCD"), which is the contractor's determination as to whether or not a particular item or service is covered locally within the contractor's own limited jurisdiction. Id. § 1395ff(f)(2)(B). Absent a governing NCD or LCD, the contractor applies the "not reasonable and necessary" coverage exclusion and other applicable coverage criteria to the particular factual circumstances of an individual claim for Medicare benefits. 68 Fed. Reg. 63692, 63693 (Sept. 26, 2003) (final rule).

The statute establishes various methods for the determination of payments owing for different covered Part B items and services. See generally 42 U.S.C. § 1395l. See also id. §§ 1395w-4 (fee schedule payment for physician services), 1395m(a) & (h) (special payment rules for DME and prosthetics and orthotics, respectively). The Part B payment for covered surgical dressings is 80 percent of the lesser of the actual charge for the item or the payment amount determined by the fee schedule payment methodology for DME with certain adjustments. Id. § 1395m(i). See also id. § 1395m(a)(2) (DME fee schedule payment requirements); 42

C.F.R. §§ 414.200-414.232 (same).

    2.    The Secretary, through the Centers for Medicare & Medicaid Services ("CMS"),

contracts with local private insurance "carriers" to administer the Part B claims process. 42

U.S.C. § 1395u; 42 C.F.R. § 421.200.[1/] However, DMEPOS benefit claims are administered by

four "DME Medicare Administrative Contractors" ("DME MACs") (formerly known as "DME

Regional Carriers" or "DMERCs"). 42 U.S.C. §§ 1395m(a)(12), 1395kk-1; 42 C.F.R.

§§ 421.210(b), 421.404(c)(2).

    Moreover, the statute requires the Secretary to enter into contracts with eligible entities to

carry out "Medicare integrity program" functions. See 42 U.S.C. § 1395ddd; 42 C.F.R. §

421.300. Thus, CMS contracted with three "DME Program Safeguard Contractors" ("DME

PSCs") that were responsible, from March 1, 2006 through February 29, 2008, for creating

Medicare coverage guidelines, formulating LCDs, and conducting medical review and utilization

review of claims within their respective jurisdictions. See 42 U.S.C. § 1395ddd(b)(1)-(6); 42

C.F.R. § 421.304. Another Medicare contractor, the Statistical Analysis Durable Medical

Equipment Regional Carrier ("SADMERC"), performs limited coding functions for oral anti-

cancer drugs; assists CMS in obtaining manufacturer suggested retail prices for use with the

DMEPOS fee schedules; and analyzes data on the utilization of the Healthcare Common

Procedure Coding System ("HCPCS") codes in order to determine unreasonable or excessive

reimbursement amounts.

---

    [1/] During a six-year transition period, between October 1, 2005 and October 1, 2011, the
administrative responsibilities of the various Part B carriers and the Part A "fiscal
intermediaries" will be taken over by different "Medicare Administrative Contractors"
("MACs"). 42 U.S.C. § 1395kk-1; 42 C.F.R. § 421.400.

3.    Medical supplies and other items of DMEPOS must be furnished "incident to a physician's service" or by a "supplier" that possesses both a valid Medicare supplier number and DMEPOS "billing privileges." 42 U.S.C. §§ 1395m(j)(1), 1395x(d); 42 C.F.R. § 424.57. A DMEPOS supplier must submit a timely electronic claim to the pertinent Medicare contractor (now a DME MAC). 42 C.F.R. §§ 424.32(d), 424.44. Each Part B payment claim for items or services furnished by a physician or supplier must be supported by sufficient information and documentation for the Medicare contractor to determine whether the items or services are covered and the amount of any payment deemed owing. 42 U.S.C. § 1395l(e); 42 C.F.R. § 424.5(a)(6). For medical supplies and other items of DMEPOS, the supplier's electronic claim must include the appropriate HCPCS Level II code. 45 C.F.R. §§ 162.1000(a), 162.1002(b)(3). See also 45 C.F.R. §§ 160.103, 162.100.

4.    The Medicare statute and regulations afford program beneficiaries dissatisfied with a reimbursement determination, and any assignee of the individual's Part A or Part B benefit claim or the person's appeal rights, several levels of administrative review and, potentially, judicial review. 42 U.S.C. § 1395ff; 42 C.F.R. Part 405, Subpart I. Upon receipt of a claim for payment for items or services furnished, the Medicare contractor issues a notice of "initial determination" addressing whether the items or services are covered and meet all other payment requirements, and, if so, the amount deemed owing for such items or services. 42 U.S.C. § 1395ff(a)(1); 42 C.F.R. § 405.920.[2/] If the claimant (i.e., the beneficiary or any assignee of the beneficiary's claim) is dissatisfied with some aspect of the initial determination, a

_____

[2/]  The supplier is paid directly if it accepted assignment of the beneficiary's claim; otherwise, the beneficiary is paid. 42 U.S.C. § 1395u(b)(3)(B)(ii); 42 C.F.R. §§ 424.53(e), 424.55(a).

-6-

"redetermination" may be requested by the same contractor. 42 U.S.C. § 1395ff(a)(3); 42 C.F.R. § 405.940. Next, if the claimant is dissatisfied with the contractor's redetermination, a "reconsideration" may be requested by a "qualified independent contractor" ("QIC"). 42 U.S.C. § 1395ff(b)(1)(A) & (c); 42 C.F.R. § 405.960. For claims involving at least $100 in controversy, a still dissatisfied claimant may request a hearing, "as provided in [42 U.S.C. § ] 405(b)," before an administrative law judge ("ALJ"). 42 U.S.C. § 1395ff(b)(1)(A), (E) & (d)(1); 42 C.F.R. § 405.1002. Furthermore, the ALJ's decision may be reviewed by the Medicare Appeals Council of the Departmental Appeals Board. 42 U.S.C. § 1395ff(d)(2); 42 C.F.R. § 405.1100. The claimant also may seek judicial review, "as provided in [42 U.S.C. § ] 405(g)," of the final agency decision of the ALJ or the Medicare Appeals Council, as applicable, on claims involving at least $1,000 in controversy. 42 U.S.C. § 1395ff(b)(1)(A), (E); 42 C.F.R. § 405.1136.[3/] See also 42 U.S.C. § 1395ff(b)(1)(G) (authorizing "reopening" and revisions of initial determinations under Secretary's regulatory guidelines); 42 C.F.R. §§ 405.980-405.986 (reopening rules).

In addition to the forgoing provisions for administrative and judicial review of the denial of an individual benefit claim, different provisions allow for a facial challenge to a national coverage determination ("NCD") or a local coverage determination ("LCD"). An "aggrieved party" can request review of an NCD by the Departmental Appeals Board ("DAB"), and the DAB's final decision is subject to judicial review. 42 U.S.C. § 1395ff(f)(1); 42 C.F.R. Part 426, Subpart E. Also, an aggrieved party can request review of an LCD by an ALJ; the ALJ's

---

[3/] A claimant's capacity to satisfy the amount in controversy requirements for an ALJ hearing and judicial review is enhanced by provisions that allow for the aggregation of benefit claims. 42 U.S.C. § 1395ff(b)(1)(E)(ii); 42 C.F.R. § 405.1006(e). Other provisions authorize "expedited access to judicial review" under certain conditions. 42 U.S.C. § 1395ff(b)(2); 42 C.F.R. § 405.990.

decision is reviewable by the DAB; and the final decision of the ALJ or the DAB, as applicable, is subject to judicial review.  42 U.S.C. § 1395ff(f)(2); 42 C.F.R. Part 426, Subpart D.

## STATEMENT OF THE CASE

1.    Plaintiff instituted this action with the filing of its Complaint on February 25, 2008.  Plaintiff is a Medicare enrolled supplier of wound care supplies, including non-bordered composite dressings.  (Plaintiff's Complaint ("Compl.") at ¶ 7; Defendant's Answer ("Answer") at ¶ 7.)

After furnishing non-bordered composite dressings to Medicare beneficiaries, the supplier submitted Part B reimbursement claims under the HCPCS Level II codes for composite dressings without adhesive borders, A6200, A6201, and A6202.  (Compl. at ¶¶ 7, 21; Answer at ¶¶ 7, 21.) The DME MACs and the former DMERCS denied some of Plaintiff's claims for lack of medical necessity.  (Compl. at ¶ 22; Answer at ¶ 22.)  The supplier filed administrative appeals of the denied claims, and various ALJs ruled for Plaintiff in some cases.  (Id.)[4]  In reversing some of the claim denials, the ALJs did not adopt the views expressed in the testimony of the former Medical Directors for the three DME PSCs.  (Compl. at ¶ 23; Answer at ¶ 23.)

2.    In September 2006, various DME PSCs, DME MACs, and DMERCs (collectively, "the DME contractors") issued a Bulletin Article (copy attached as Exhibit A hereto) notifying Medicare suppliers of a revision to the definition of "composite dressings," which was effective October 1, 2006.  (Compl. at ¶ 26; Answer at ¶ 26; Exhibit A hereto.)  Under the revised definition, the requisite "bacterial barrier" for a composite dressing must encompass

---

[4]  Plaintiff alleges that the ALJs adjudicated approximately 38,000 of its denied reimbursement claims and reversed about 98% of the claim denials.  (Compl. at ¶ 22.)

-8-

the entire dressing pad including an adhesive border. (Compl. at ¶ 28; Answer at ¶ 28; Exhibit A

at 2.) Since the revised definition of "composite dressings" required an adhesive border, the

DME contractors' Bulletin Article provided that the HCPCS Level II codes for composite

dressings without adhesive borders, A6200, A6201, and A6202, were invalid for Medicare

claims submission. (Compl. at ¶ 28; Answer at ¶ 28; Exhibit A at 1.) The Bulletin Article

further provided that non-bordered "[d]ressings previously coded as A6200, A6201, and A6202

will be coded as specialty absorptive dressings without adhesive border - - A6251, A6252, and

A6253, respectively." (Exhibit A at 2.) Later, in March 2007, the DME contractors issued a

Policy Article that incorporated the September 2006 Bulletin Article's revised definition of

"composite dressings" and the invalidation of HCPCS codes A6200, A6201, and A6202 for

purposes of Medicare claims submission. (Compl. at ¶ 26; Answer at ¶ 26.)

After the DME contractors' September 2006 Bulletin Article and March 2007 Policy

Article were issued, Plaintiff continued to submit claims for Medicare reimbursement under

HCPCS Level II codes A6200, A6201, and A6202. (Compl. at ¶ 44; Answer at ¶ 44.) There is

no allegation in Plaintiff's Complaint that it submitted any claims in accordance with the DME

contractors' instruction, in the September 2006 Bulletin Article, that claims for non-bordered

dressings should be coded as specialty absorptive dressings without adhesive border under

HCPCS codes A6251, A6252, and A6253. (See Exhibit A at 2.)

Some of Plaintiff's claims under HCPCS codes A6200, A6201, and A6202, submitted

after the DME contractors' September 2006 Bulletin Article and March 2007 Policy Article,

were processed and paid by the DME MACs for Jurisdiction A and Jurisdiction D. (Compl. at

¶ 46; Answer at ¶ 46.) The other two DME MACs, for Jurisdiction B and Jurisdiction C,

rejected some of Plaintiff's claims, under HCPCS codes A6200, A6201, and A6202, as invalidly coded claims under the DME contractors' September 2006 Bulletin Article and March 2007 Policy Article. (Id.)

      3.     There is no allegation in the Complaint that Plaintiff made any effort to file any administrative appeals challenging the DME contractors' September 2006 Bulletin Article or their March 2007 Policy Article. Instead, Plaintiff tried, without success, various informal means of convincing CMS to countermand the DME contractors' September 2006 Bulletin Article and March 2007 Policy Article. (See Compl. at ¶¶ 31, 32, 39-41; Answer at ¶¶ 31, 32, 39-41.)

      Plaintiff then filed this suit alleging that CMS and the DME contractors deprived the supplier of both Medicare reimbursement and its administrative appeal rights in contravention of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 704, 706. (Compl. at ¶¶ 1-4, 54-63.) Specifically, Plaintiff alleges that the DME contractors, in requiring an adhesive border for composite dressings and determining that the HCPCS codes for composite dressings without adhesive borders, A6200, A6201, and A6202, were invalid for Medicare claims submission, violated "CMS's Healthcare Common Procedure Coding System (HCPCS) Level II Coding Procedures." (Compl. at ¶¶ 33-37, 42, 43, 49-53, 55-57. But cf. Answer at ¶¶ 33-37, 42, 43, 49-53, 55-57.) Plaintiff further alleges that, as a result of the DME contractors' actions, it "has been denied reimbursement totaling $741,442" on 1,714 claims for the period from October 1, 2006 through October 31, 2007. (Compl. at ¶ 45. See also Compl. at ¶ 1 (as a result of the DME contractors' actions, "Secretary denied Plaintiff's claims for Medicare reimbursement"). But cf. Answer at ¶¶ 1, 45.) Moreover, Plaintiff alleges that it has been unlawfully deprived of its administrative appeal rights because two of the DME MACs rejected the supplier's claims as

-10-

invalidly coded and thus not subject to administrative appeal. (Complaint at ¶¶ 2, 46-48, 54, 58-60, 62. But cf. Answer at ¶¶ 2, 46-48, 54, 58-60, 62.)

For relief, Plaintiff seeks a declaration that the DME contractors' September 2006 Bulletin Article and March 2007 Policy Article are null and void, and an order preventing further implementation of those provisions and reinstatement of the status quo ante. (Compl. at ¶¶ 64, 67, 68. ) Plaintiff also requests an order requiring reimbursement of its denied claims and prohibiting recoupment of overpayments. (Id. at ¶¶ 65, 69.) Alternatively, Plaintiff seeks an order requiring the provision of an administrative appeal remedy for its denied claims. (Id. at ¶ 66. But cf. Answer at ¶¶ 64-70.)

## ARGUMENT

### I.    THERE IS NO SUBJECT MATTER JURISDICTION OVER THIS ACTION

"It is axiomatic that '[a] federal court's subject matter jurisdiction, constitutionally limited by Article III, extends only so far as Congress provides by statute.'" Three Lower Counties Comm. Health Servs., Inc. v. U.S. Dep't of Health & Human Servs., 517 F. Supp. 2d 431, 434 (D.D.C. 2007) (citation omitted). Moreover, "'the plaintiff[] bear[s] the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction.'" Carney Hosp. Transitional Care Unit v. Leavitt, 549 F. Supp. 2d 93, 95 (D.D.C. 2008) (citations omitted). In considering the Secretary's instant motion to dismiss for lack of subject matter jurisdiction, the Court should "construe plaintiff's complaint in plaintiff's favor, accepting all inferences that can be derived from the facts alleged." Id. (citation omitted). However, "the court is not limited to the allegations contained in the complaint." Atlantic Urological Assocs., P.A. v. Leavitt, 549 F. Supp. 2d 20, 26 (D.D.C. 2008) (citation omitted). "Instead, to determine

-11-

whether it has jurisdiction over the claim, the court may consider materials outside the

pleadings." Id. (citation omitted).

> A.    Federal Question Jurisdiction Is Expressly Precluded by
>        the Medicare Statute, 42 U.S.C. §§ 405(h) and 1395ii, and by
>        Plaintiff's Failure to Exhaust Available Administrative Appeals Remedies

> 1.    Plaintiff alleges subject matter jurisdiction solely under the federal question

statute, 28 U.S.C. § 1331. (Compl. at ¶ 4.) However, the Medicare statute, 42 U.S.C. §§ 405(h)

and 1395ii, expressly bars federal question jurisdiction, and requires Plaintiff to exhaust available

administrative appeals remedies before a final decision of the Secretary can be subject to judicial

review under the Medicare statute's exclusive grant of subject matter jurisdiction, 42 U.S.C.

§§ 405(g), 1395ff. But there is no allegation in the Complaint that Plaintiff has even filed an

administrative appeal of the matters at issue, much less that it has obtained the hearing and final

decision of the Secretary required for judicial review under the Medicare statute.

Section 405(h), which is incorporated into the Medicare statute by § 1395ii, provides:

> The findings and decisions of the [Secretary] after a hearing shall be binding upon
> all individuals who were parties to such hearing. No findings of fact or decision
> of the [Secretary] shall be reviewed by any person, tribunal, or government agency
> except as herein provided. No action against the United States, the [Secretary], or
> any officer or employee thereof shall be brought under section 1331 or 1346 of
> title 28, United States Code, to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h). The Medicare statute and regulations afford dissatisfied program

beneficiaries, and any assignee of the individual's Part A or Part B benefit claim or the person's

appeal rights, several levels of administrative review and, potentially, judicial review. 42 U.S.C.

§§ 405(g), 1395ff; 42 C.F.R. Part 405, Subpart I. Plaintiff does not allege that it has made any

effort to file any administrative appeals of, or obtained a hearing on, any of the matters raised in

the Complaint, including the alleged denial of $741,442 in reimbursement owing for its 1,714 Part B benefit claims and other monetary relief, and the allegedly unlawful actions taken in the DME contractors' September 2006 Bulletin Article and March 2007 Policy Article. (See Compl. at ¶¶ 45, 64, 65, 67-69.) Similarly, Plaintiff nowhere alleges having obtained the "Secretary's final decision after such hearing" on the matters at issue, which is a requirement for subject matter jurisdiction under the Medicare statute, 42 U.S.C. §§ 405(g), 1395ff. (See pp. 24-30, infra (detailing Plaintiff's failure to satisfy the statutorily imposed exhaustion requirement, and why requiring exhaustion would, in any event, further the interests of administrative finality and judicial economy).

      2.      Beyond Plaintiff's complete failure to satisfy the prerequisites of subject matter jurisdiction under the Medicare statute, 42 U.S.C. §§ 405(h) and 1395ii expressly foreclose Plaintiff's invocation of federal question jurisdiction as a "fallback argument." Your Home Visiting Nurse Servs., Inc. v. Shalala, 525 U.S. 449, 456 (1999) (§ 405(h) bars § 1331 jurisdiction over a Medicare fiscal intermediary's denial of a provider's request for reopening, even though the reopening denial is also not reviewable under the Medicare statute or the federal mandamus statute). Section 405(h) specifically applies to "any claim arising under" the Medicare statute. As the Supreme Court has held repeatedly, a "claim 'arises under' the Medicare Act within the meaning of this provision . . . [if] 'both the standing and the substantive basis for the presentation' of the claim are the Medicare Act." Id. (quoting Heckler v. Ringer, 466 U.S. 602, 615 (1984)).

      Here, Plaintiff's "standing" is clearly predicated on the Medicare statute, for it seeks an order requiring $741,442 in reimbursement for 1,714 denied claims and prohibiting recoupment

-13-

of overpayments. (Compl. at ¶¶ 65, 69.) Furthermore, Plaintiff seeks declaratory and injunctive

relief as to the DME contractors' September 2006 Bulletin Article and March 2007 Policy

Article, and reinstatement of the status quo ante. (Id. at ¶¶ 64, 67, 68.) Plaintiff's standing

springs from the Medicare statute inasmuch as entry of the declaratory and injunctive relief

sought in the Complaint may leave "only essentially ministerial details . . . before [Plaintiff ]

would receive reimbursement." Ringer, 466 U.S. at 615.

Moreover, the Medicare statute plainly supplies "'the substantive basis for the

presentation' of the claim[s]" at issue. Your Home Visiting Nurse Servs., 525 U.S. at 456

(citation omitted). As explained above, Medicare Part B allows coverage of "medical and other

health services," which includes medical supplies. 42 U.S.C. §§ 1395k(a)(1), 1395m(j)(5),

1395x(s)(1), (2)(A), (6), (8), & (9). Certain surgical dressings are among the medical supplies

that potentially qualify for Part B coverage. Id. §§ 1395m(j)(5)(D), 1395x(s)(5); 42 C.F.R.

§ 410.36(a)(1). The non-bordered composite dressings that Plaintiff has supplied to Medicare

beneficiaries are surgical dressings that may qualify for Medicare coverage. (See Compl. at ¶¶ 7,

10, 17, 27.) Indeed, the DME contractors' September 2006 Bulletin Article is entitled "Surgical

Dressings - Revised Coding Guidelines." (Exhibit A at 1.)

3.      Perhaps Plaintiff will respond that its claims arise under the Administrative

Procedure Act ("APA") because it is challenging the "procedures" by which the DME

contractors revised the definition of "composite dressing" and determined that the HCPCS Level

II codes for non-bordered composite dressings are no longer valid for Medicare claims

submission. (See Compl. at ¶¶ 26, 28.) The Supreme Court has held, however, that § 405(h)'s

bar of federal question jurisdiction is "sweeping and direct," Weinberger v. Salfi, 422 U.S. 749,

-14-

757 (1975), and encompasses "all 'claims arising under the' Medicare Act." Ringer, 466 U.S. at

615 (citation omitted). Thus, as this Circuit concluded, under the "Salfi-Ringer line" of

precedent, § 405(h) requires that every aspect of any "claim arising under" the Medicare

statute - - whether constitutional, APA, substantive, or procedural - - must be "fed through the

administrative-judicial system as parts of disputes over actual amounts" of payment. Nat'l

Kidney Patients Ass'n v. Sullivan, 958 F.2d 1127, 1130, 1134 (D.C. Cir. 1992).

Indeed, in the Supreme Court's most recent, comprehensive review of the Salfi-Ringer

line of authority, the Court explained:

> Those cases themselves foreclose distinctions based upon the "potential future"
> versus the "actual present" nature of the claim, the "general legal" versus the "fact
> specific" nature of the challenge, the "collateral" versus "noncollateral" nature of
> the issues, or the "declaratory" versus "injunctive" nature of the relief sought.

Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1, 14 (2000). The Court also

rejected "a distinction that limits the scope of § 405(h) to claims for monetary benefits" as

distinct from claims that "dispute agency policy determinations, or . . . involve the application,

interpretation, or constitutionality of interrelated regulations or statutory provisions." Id. Thus,

the Court concluded that the Medicare statute's comprehensive remedial scheme "demands the

'channeling' of virtually all legal attacks" on Medicare matters "through the agency" before they

can be heard in federal court under the statute's own grant of subject matter jurisdiction over a

final decision of the Secretary. Id. at 13.

There is no question that Plaintiff seeks Part B reimbursement. Indeed, the supplier seeks

payment of a sum certain for 1,714 benefit claims plus an order prohibiting recoupment of

overpayments on other claims. (Compl. at ¶¶ 65, 69.) Besides its monetary claims, Plaintiff also

-15-

challenges the DME contractors' September 2006 Bulletin Article and March 2007 Policy

Article, and the supplier seeks reinstatement of the status quo ante. (Id. at ¶¶ 64, 67, 68.) But

regardless of whether Plaintiff's challenge to the DME contractors' actions is deemed

"procedural" or assigned some other label, the supplier's allegations about the DME contractors'

actions are "inextricably intertwined" with its many Part B benefit claims, and thus § 405(h) bars

federal question jurisdiction and requires Plaintiff to exhaust administrative appeals remedies on

all aspects of its "claims arising under" the Medicare statute. Ringer, 466 U.S. at 614.

> B.    Plaintiff's Claims Do Not Fall Within the Ambit of the Limited Exception,
> Recognized by the Supreme Court, to § 405(h)'s Jurisdictional Bar

1.    The Supreme Court has recognized one narrow exception to § 405(h)'s

prohibition of federal question jurisdiction for disputes pertaining to the Medicare program.  But

that limited exception clearly has no bearing on Plaintiff's allegations herein.

In Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 668 (1986), an

association of physicians brought statutory and constitutional challenges to a Medicare regulation

setting forth the "methods" for determining the amount of Part B payment for various physician

services.  At that juncture, the Medicare statute provided for only limited carrier review of Part B

benefit claims, and the Supreme Court had previously ruled that the statute precluded judicial

review of the "amount of Part B awards."  United States v. Erika, Inc., 456 U.S. 201, 208 (1982).

In Michigan Academy, 476 U.S. at 676, 681, the Supreme Court held that Congress did preclude

judicial "review of the method by which Part B awards are computed," whereas allowing federal

question jurisdiction would ensure a judicial forum for colorable constitutional claims.[5]

---

[5]  Four months after the Michigan Academy decision, Congress amended the Medicare statute to provide for full administrative and judicial review of all aspects of Part B benefit

In <u>Illinois Council</u>, the Supreme Court limited the exception to § 405(h) that was

countenanced in the <u>Michigan Academy</u> decision. The Court "read <u>Michigan Academy</u> as

<u>holding</u> that § 1395ii does not apply § 405(h) [only] where application of § 405(h) would not

simply channel review through the agency, but would mean no review at all." <u>Illinois Council</u>,

529 U.S. at 19. The Court emphasized, however, that the scope of the exception to § 405(h)'s

jurisdictional preclusion is very limited:

> [W]e do not hold that an individual party could circumvent § 1395ii's
> channeling requirement simply because that party shows that
> postponement would mean added inconvenience or cost in an isolated,
> particular case. Rather, the question is whether, as applied generally to
> those covered by a particular statutory provision, hardship likely found in
> many cases turns what appears to be simply a channeling requirement into
> <u>complete</u> preclusion of judicial review.

<u>Id.</u> at 22-23 (citation omitted).

2.    Plaintiff's claims certainly do not fall within the limited exception to § 405(h)'s

jurisdictional bar that was recognized in <u>Illinois Council</u>. First, as a Medicare enrolled supplier

of surgical dressings, there is no question that Plaintiff is the kind of entity that can make ready

use of the Medicare statute's exclusive system of administrative and judicial review. <u>See</u> 42

U.S.C. § 1395ff(a)(1); 42 C.F.R. § 405.920. Indeed, Plaintiff alleges that the ALJs have already

adjudicated approximately 38,000 of its previously denied Part B reimbursement claims and

reversed about 98% of the claim denials. (Compl. at ¶ 22.)

---

claims. <u>Nat'l Kidney Patients Ass'n</u>, 958 F.2d at 1132. Given the intervening statutory
amendments enabling full administrative and judicial review of the amount, and the methods for
determining the amount, of Part B claims, this Circuit and others have concluded that the
<u>Michigan Academy</u> rationale for § 1331 jurisdiction has no continuing applicability to Part B
claims. <u>Id.</u> at 1134. <u>Accord</u> <u>Am. Acad. of Dermatology v. HHS</u>, 118 F.3d 1495, 1500 (11th Cir.
1997); <u>Farkas v. Blue Cross & Blue Shield</u>, 24 F.3d 853, 860 (6th Cir. 1994); <u>Abbey v. Sullivan</u>,
978 F.2d 37, 41-43 (2nd Cir. 1992).

Second, Plaintiff's claims are plainly garden variety Part B benefit claims, and, as such, the Medicare statute expressly provides for administrative and judicial review of such claims. 42 U.S.C. § 1395ff(a)(1)(B) (an "initial determination of the amount of benefits available . . . under such parts" is subject to administrative and judicial review). See also 42 C.F.R. § 405.920(b) (same). The gravamen of the Complaint is Plaintiff's request for an order seeking "denied reimbursement totaling $741,442" on 1,714 claims for the period from October 1, 2006 through October 31, 2007, and prohibiting recoupment of overpayments. (Compl. at ¶¶ 45, 65, 69.) The statute unquestionably provides for administrative and judicial review of such claims, which "at bottom [raise] a claim that they should be paid" for specific medical supplies. Ringer, 466 U.S. at 614.

Third, although Plaintiff also challenges the DME contractors' September 2006 Bulletin Article and March 2007 Policy Article, which revised the definition of "composite dressing" and determined that the HCPCS Level II codes for non-bordered composite dressings were invalid for Medicare claims submission, (Compl. at ¶¶ 64, 67, 68), there is no question that Plaintiff's challenge to the DME contractors' actions can be raised as part and parcel of their appeals seeking Part B reimbursement for medical supplies. The statute provides that, in addition to appeals of the "amount of benefits available," 42 U.S.C. § 1395ff(a)(1)(B), full administrative and judicial review is available as to "[a]ny other initial determination with respect to a claim for benefits under such parts, including an initial determination . . . that payment may not be made." Id. § 1395ff(a)(1)(C). See also 42 C.F.R. § 405.924(b)(12) (an appealable initial determination includes "[a]ny other issues having a present or potential effect on the amount of benefits to be paid under Part A or Part B"). Given that Plaintiff seeks "payment for some medical procedure"

-18-

and "challenges the lawfulness of th[e] denial" of its reimbursement claims, federal question jurisdiction is "plainly" barred, "irrespective of whether [it] challenges the agency's denial on evidentiary, rule-related, statutory, constitutional, or other legal grounds." Illinois Council, 529 U.S. at 10. Accord Ringer, 466 U.S. at 615, 621; Salfi, 442 U.S. at 760-61.

This Circuit's decision in National Kidney Patients Association v. Sullivan, 958 F.2d 1127 (D.C. Cir. 1992) is particularly instructive here. The plaintiffs, a supplier of home dialysis equipment and supplies, ten dialysis patients, and a patients' group, complained that the Secretary's reduction in the rate of Part B reimbursement violated APA notice and comment rulemaking requirements and was arbitrary and capricious under the APA. Id. at 1129. The district court asserted federal question jurisdiction, and granted a preliminary injunction prohibiting the Secretary from recouping $15 million in overpayments. Id. at 1127. (Cf. Compl. at ¶¶ 4, 49-69.) The Court of Appeals ruled that § 405(h) barred § 1331 jurisdiction over plaintiffs' claims regardless of whether plaintiffs were deemed to be challenging the "amount" of Part B payment or the "methods" by which such payment amounts are determined. Id. at 1134. Based on Congress's extension of full administrative and judicial review to all aspects of Part B claims, following the Supreme Court's Michigan Academy decision, the Circuit held that, under the "Salfi-Ringer line" of precedent, § 405(h) requires that "methodology disputes . . . are fed through the administrative-judicial system as parts of disputes over actual amounts" of Part B payment. Id. at 1129, 1133-34. Thus, under the settled precedent of the Supreme Court and this Circuit, § 405(h) limits review of all aspects of Plaintiff's Part B claims, including its APA challenge to the DME contractor's actions, to the exclusive, multi-tiered administrative and judicial review process established by Congress in 42 U.S.C. § 1395ff.

3.      Plaintiff may respond that the agency's disposition of the supplier's Part B claims,
submitted following the DME contractors' September 2006 Bulletin Article and March 2007
Policy Article, forecloses resort to the administrative appeals process. Yet, in actuality, the steps
necessary for Plaintiff to obtain an initial determination, which would allow for appeal of all its
claims, are straightforward.

As described previously, some of Plaintiff's claims under HCPCS codes A6200, A6201,
and A6202 were processed and paid by the DME MACs for Jurisdiction A and Jurisdiction D.
(Compl. at ¶ 46; Answer at ¶ 46.)  However, inasmuch as the DME contractors determined, in
the September 2006 Bulletin Article and March 2007 Policy Article, that HCPCS codes A6200,
A6201, and A6202 were invalid for purposes of Medicare claims submission, the Secretary may
decide eventually to recover overpayments made under those three codes.  See generally 42
U.S.C. § 1395ddd(f).  Each payment to the supplier was made through an initial determination.
42 C.F.R. § 405.920(b).  However, each initial determination is subject to "reopening," which is
"a remedial action taken to change a final determination or decision that resulted in either an
overpayment or underpayment."  Id. § 405.980(a)(1).  See also 42 U.S.C. § 1395ff(b)(1)(G)
(authorizing the reopening and revision of initial determinations under the Secretary's regulatory
guidelines).  In turn, if one of the initial determinations providing payment to Plaintiff were
reopened, any recovery of an overpayment would be made through a "revised determination,"
and revised determinations are subject to the same administrative and judicial review process as
applies to initial determinations.  42 C.F.R. §§ 405.982(a), 405.984.  Thus, if the Secretary were
to recover overpayments made on Plaintiff's claims under HCPCS codes A6200, A6201, and
A6202, there is no question that the full panoply of statutory appeal rights would be available on

-20-

the revised determinations springing from the reopening of the initial determinations that produced the original overpayments.

4.     The other two DME MACs, for Jurisdiction B and Jurisdiction C, rejected some of Plaintiff's claims, under HCPCS codes A6200, A6201, and A6202, as invalidly coded claims under the DME contractors' September 2006 Bulletin Article and March 2007 Policy Article. (Compl. at ¶ 46; Answer at ¶ 46.)  The regulations provide that invalid claim submissions that are rejected by the Medicare contractor and returned to the provider or supplier are not appealable initial determinations.  42 C.F.R. § 405.926(s).  Assuming that this regulation applies to those of Plaintiff's claims that were rejected as improperly coded, that would hardly establish the applicability of the limited exception to § 405(h)'s bar of federal question jurisdiction that was recognized in the Illinois Council and Michigan Academy decisions.  Put simply, Plaintiff could have submitted claims under other HCPCS codes - - codes that are still valid for purposes of Medicare claims submission - - and then appealed the Medicare contractor's initial determinations on reimbursement claims submitted under such alternative HCPCS codes.

       As described previously, the very September 2006 Bulletin Article that is challenged by Plaintiff includes express instructions for the use of alternative HCPCS Level II codes. Specifically, the DME contractors' September 2006 Bulletin Article provides that non-bordered "[d]ressings previously coded as A6200, A6201, and A6202 will be coded as specialty absorptive dressings without adhesive border - - A6251, A6252, and A6253, respectively." (Exhibit A at 2.)[6/]  If Plaintiff were to submit an appropriate claim under one of the alternative HCPCS Level II

_____

       [6/]  In characterizing the September 2006 Bulletin Article, Plaintiff fails to mention the DME contractors' specific instructions for the use of three alternative HCPCS Level II codes. (See Compl. at ¶ 26.)

-21-

codes identified in the September 2006 Bulletin Article, the Medicare contractor would issue an

initial determination addressing whether the specific non-bordered dressing was "covered or

otherwise reimbursable" and "[d]etermin[ing] any amounts payable and mak[ing] payment

accordingly." 42 C.F.R. § 405.920(a), (b). In turn, if Plaintiff were dissatisfied with some aspect

of the initial determination, the statute would authorize several levels of administrative review

and, potentially, judicial review. 42 U.S.C. § 1395ff. See also 42 C.F.R. Part 405, Subpart I.

More specifically, in appealing the initial determination regarding an appropriate claim under one

of the alternative HCPCS Level II codes identified in the September 2006 Bulletin Article, the

supplier would be free to challenge the DME contractors' revision of the definition of

"composite dressing" (now requiring an adhesive border) and their determination that HCPCS

Level II codes A6200, A6201, and A6202 are no longer valid for purposes of Medicare claims

submission. Since the complained of actions by the DME contractors "hav[e] a present or

potential effect on the amount of benefits to be paid under Part A or Part B," 42 C.F.R. §

405.924(b)(12), Plaintiff can challenge the DME contractors' actions in an appeal of an initial

determination springing from a Part B claim submitted under one of the alternative HCPCS

Level II codes identified in the September 2006 Bulletin Article.

Plaintiff may complain that, at least for some of the surgical dressings furnished already,

it would be "too late" to submit Part B reimbursement claims under one of the alternative

HCPCS Level II codes identified in the September 2006 Bulletin Article. While there are time

limits for the filing of claims, they are generous and Plaintiff may be able to submit claims under

the alternative HCPCS codes for many items already furnished to Medicare beneficiaries. See 42

C.F.R. § 424.44. At a minimum, Plaintiff faces no impediment to the submission of claims

-22-

under the alternative HCPCS codes for items supplied at a future date.

In any event, to the extent that Plaintiff may have missed the deadline for submitting certain claims under the alternative HCPCS codes, that hardly qualifies it for the limited exception to § 405(h)'s bar of federal question jurisdiction. Nothing in the Supreme Court's decisions in Illinois Council and Michigan Academy suggests that a plaintiff can evade § 405(h)'s jurisdictional preclusion simply because that plaintiff might otherwise be unable to pursue a specific claim through the statutory appeals mechanism established by Congress for claims of the same type. On the contrary, the Supreme Court has made clear that the exception applies only when there would otherwise be "no review at all." Illinois Council, 529 U.S. at 19 (emphasis added). Thus, in Illinois Council itself, the Court held that § 405(h) bars § 1331 jurisdiction over the claims of the sole plaintiff, a trade association, because the non-party members of the association could seek administrative and judicial review of similar claims under the Medicare statute. Id. Similarly, in Ringer, 466 U.S. at 613-16, 620, the Court rejected federal question jurisdiction over Part A benefit claims even though the named plaintiff could not secure administrative and judicial review under 42 U.S.C. § 405(b) & (g) because he could not otherwise afford the disputed surgical procedure, and the other three plaintiffs had already missed the deadlines for appeal of their claims denials. And in Your Home Visiting Nurse Services, 525 U.S. at 451, 455, the Court rejected § 1331 jurisdiction over a Part A fiscal intermediary's reopening denial because "Medicare providers already have the right under [42 U.S.C.] § 1395oo(a)(3) to appeal an intermediary's determination to the [Provider Reimbursement Review] Board," and "[t]he Board's decision is subject to judicial review . . . [under] § 1395oo(f)," leaving it of no consequence that the plaintiff had previously failed to file a timely

-23-

appeal to the Board of the underlying reimbursement issue.[2/]

Clearly, then, the exception to § 405(h)'s bar of federal question jurisdiction applies only if the Medicare statute includes no mechanism through which an appropriate party, exercising due diligence, can secure administrative and judicial review of the type of claim in question. Plaintiff's failure to follow the DME contractors' express instruction, to submit claims under alternative HCPCS codes, may explain why the supplier has not received appealable "initial determinations" on the matters raised in the Complaint. Regardless, allowing Plaintiff to evade § 405(h)'s bar of federal question jurisdiction would improperly reward its failure to take the straightforward steps necessary to obtain the initial determinations that would allow entry into the Medicare statute's exclusive mechanism for administrative and judicial review of all aspects of its "claims arising under" the statute.

      C.      Plaintiff Has Not Exhausted Administrative Remedies, Which Is a Prerequisite of Judicial Review Under the Exclusive Provisions of 42 U.S.C. §§ 405(g), 1395ff

      1.      As shown previously, Plaintiff's Complaint raises only "claims arising under" the Medicare statute, which must channeled through 42 U.S.C. § 1395ff(b), the dedicated administrative and judicial review regime for all aspects of Part B benefit claims. This exclusive

---

[2/] See also Am. Chiropractic Ass'n, Inc. v. Leavitt, 431 F.3d 812, 815 (D.C. Cir. 2005) (§ 405(h) precludes federal question jurisdiction over claims of the sole plaintiff, an association of chiropractors, even though it would take non-party individual chiropractors to pursue the same statutory challenge through the exclusive Medicare administrative and judicial review mechanism); Nat'l Athletic Trainers' Ass'n, Inc. v. U.S. Dep't of Health & Human Servs., 455 F.3d 500, 507-08 (5th Cir. 2006) (§ 405(h) bars § 1331 jurisdiction over claims of association of athletic trainers, although non-party physicians would need to pursue the same regulatory challenge through the Medicare appeals regime); St. Francis Med. Ctr. v. Shalala, 32 F.2d 805, 808-14 (3rd Cir. 1994) (§ 405(h) bars § 1331 jurisdiction even though Part A provider could not meet the amount in controversy requirement for administrative and judicial review under § 1395oo); Westchester Mgt. Corp. v. DHHS, 948 F.2d 279, 281-83 (6th Cir. 1991) (same).

grant of subject matter jurisdiction provides:

> [A]ny individual dissatisfied with any initial determination under subsection (a)(1) shall be entitled to reconsideration of the determination, and . . . a hearing thereon by the Secretary to the same extent as is provided in [42 U.S.C. § ] 405(b) and, . . . to judicial review of the Secretary's final decision after such hearing as is provided in [ § ] 405(g).

42 U.S.C. § 1395ff(b)(1)(A).  The referenced "reconsideration" must be provided by a "qualified independent contractor" ("QIC").  42 U.S.C. § 1395ff(b)(1)(A) & (c); 42 C.F.R. § 405.960.

Next, an ALJ must conduct any hearing "as provided in [42 U.S.C. § ] 405(b)," 42 U.S.C. § 1395ff(b)(1)(A), (E) & (d)(1); 42 C.F.R. § 405.1002, and the ALJ's decision may be reviewed by the Medicare Appeals Council of the Departmental Appeals Board, 42 U.S.C. § 1395ff(d)(2); 42 C.F.R. § 405.1100.  Thus, only the final decision of the ALJ or the Medicare Appeals Council, as applicable, constitutes "the Secretary's final decision after such hearing" that is subject to judicial review "as provided in [42 U.S.C. § ] 405(g)."  42 U.S.C. § 1395ff(b)(1)(A), (E); 42 C.F.R. § 405.1136.

Plaintiff nowhere alleges, however, that any aspect of its claims, including its challenge to the DME contractors' September 2006 Bulletin Article and March 2007 Policy Article and its demand for $741,442 and other monetary relief, (see Compl. at ¶¶ 45, 64, 65, 67-69), were ever raised with a QIC, an ALJ, or the Medicare Appeals Council.  By the same token, there is no allegation in the Complaint that Plaintiff ever obtained a reconsideration by a QIC, an ALJ hearing, or a final post-hearing decision by an ALJ or the Medicare Appeals Council.  Thus, Plaintiff plainly fails to allege compliance with any of § 1395ff(b)(1)(A)'s exclusive requirements for judicial review, "as is provided in 42 U.S.C. § 405(g)."  See, e.g., Three Lower Counties Comm. Health Servs., 517 F. Supp. 2d at 435 (§ 405(g) jurisdiction "is permitted only

upon the completion of the administrative process outlined in that statute and regulations").

2.    It bears emphasis that the "final decision" requirement in 42 U.S.C. § 405(g) is a "statutorily specified jurisdictional prerequisite," not "simply a codification of the judicially developed doctrine of exhaustion." Salfi, 422 U.S. at 766.  Moreover, the exclusive jurisdictional prerequisites of the Medicare statute consist of two requirements: "a nonwaivable requirement that 'a claim for benefits shall have been presented to the Secretary;'" and a final decision or exhaustion requirement, which "a district court cannot merely waive . . . for equitable or other policy reasons." Queen of Angels/Hollywood Presbyterian Med. Ctr. v. Shalala, 65 F.3d 1472, 1482 & n.24 (9th Cir. 1995) (citations omitted).  Here, Plaintiff clearly has not satisfied the Medicare statute's requirement for judicial review, for it has not obtained a final decision by the Secretary after an administrative hearing on its claims.

Notably, "the power to determine when finality has occurred ordinarily rests with the Secretary since ultimate responsibility for the integrity of the administrative program is his." Mathews v. Eldridge, 424 U.S. 319, 330 (1976).  Furthermore, given the Secretary's instant motion to dismiss for lack of subject matter jurisdiction, "it cannot be said that the Secretary has in any sense waived further exhaustion" as to any aspect of Plaintiff's challenge to the DME contractors' actions or its demand for a sum certain and other monetary relief. Ringer, 466 U.S. at 618. Cf. Queen of Angels/Hollywood Presbyterian Med. Ctr., 65 F.3d at 1481-83 (upholding Secretary's express waiver of exhaustion).

3.    Plaintiff alleges that the DME contractor's actions "culminated in a final decision of the Secretary denying Plaintiff's claims for Medicare reimbursement." (Compl. at ¶1.)  But this lone reference to an alleged final agency decision hardly satisfies the statutory requirements

-26-

for judicial review imposed by the Medicare statute. Again, the Complaint is devoid of any allegation that Plaintiff requested or obtained, regarding its challenge to the DME contractors' actions or its demand for a sum certain and other monetary relief, a reconsideration by a QIC, an ALJ hearing, or a final post-hearing decision by an ALJ or the Medicare Appeals Council. Thus, the purported "final decision of the Secretary," as alleged in paragraph 1 of the Complaint, cannot satisfy the statutory requirements for judicial review, "as is provided in 42 U.S.C. § 405(g)." 42 U.S.C. § 1395ff(b)(1)(A).

On the contrary, Plaintiff's insupportable reference to a "final decision" in paragraph 1 of the Complaint is plainly inconsistent with the rest of the Complaint. The fulcrum of the statutory administrative and judicial review mechanism is the requirement of an initial determination on a benefit claim. 42 U.S.C. § 1395ff(b)(1)(A).[8/] But Plaintiff nowhere alleges that it received or appealed any initial determinations on the matters at issue. For the claims that were processed and paid, despite the DME contractors' September 2006 Bulletin Article and March 2007 Policy Article, (see Compl. at ¶ 46; Answer at ¶ 46), Plaintiff had no reason to appeal those initial determinations, and, in any event, no such appeal is alleged in the Complaint. As for the claims that were rejected as invalidly coded, Plaintiff alleges that no administrative appeals remedies are available for the claims rejected as invalidly coded. (Id.) See also 42 C.F.R. § 405.926(s). Therefore, since Plaintiff has not alleged receipt of even one bonafide "Secretary's final decision after such hearing," there is no basis for judicial review, "as is provided in 42 U.S.C. § 405(g)," of any aspect of the supplier's challenge to the DME contractors' actions or its demands for a

---

[8/] Plaintiff's informal letters and telephone calls to CMS and the DME contractors, (see Compl. at ¶¶ 42-44), cannot substitute for compliance with the administrative appeals system. Three Lower Counties Comm. Health Servs., 517 F. Supp. 2d at 435 (collecting cases).

-27-

sum certain and other monetary relief.  42 U.S.C. § 1395ff(b)(1)(A).

      D.      Requiring Plaintiff to Exhaust Administrative Appeals Remedies on Its Claims
             Will Further the Interests of Administrative Finality and Judicial Economy

      1.      As noted, the "final decision" requirement in 42 U.S.C. §§ 405(g), 1395ff(b)(1) is

a "statutorily specified jurisdictional prerequisite," not "simply a codification of the judicially

developed doctrine of exhaustion."  Salfi, 422 U.S. at 766.  Also, the Secretary has not waived

the final decision requirement as to any aspect of Plaintiff's claims.  In any event, requiring

Plaintiff to exhaust administrative remedies will plainly serve the interests of administrative

finality and judicial economy.

    As explained by the Supreme Court:

> Exhaustion is generally required as a matter of preventing premature interference
> with agency processes, so that the agency may function efficiently and so that it
> may have an opportunity to correct its own errors, to afford the parties and the
> courts the benefit of its experience and expertise, and to compile a record which is
> adequate for judicial review.

Id. at 765 (citation omitted).  These objectives would be fully served by requiring Plaintiff to

exhaust available administrative appeals remedies.

      As set forth in the September 2006 Bulletin Article, the DME contractors determined that

a composite dressing must have a "bacterial barrier," but if a dressing has "no adhesive border,

there is no assurance that it will prevent bacterial access to a wound when it is applied."  (Exhibit

A at 1-2.)  Thus, in order to better maintain the integrity of the bacterial barrier, the DME

contractors required that composite dressings include an adhesive border; determined that

HCPCS codes A6200, A6201, and A6201 were invalid for Medicare claims submission; and

instructed that non-bordered dressings be coded as specialty absorptive dressings without

adhesive border under HCPCS codes A6251, A6252, and A6252. (Id. at 2.)

Plaintiff alleges that "[t]here is no medical justification for the change in definition" of "composite dressing." (Compl. at ¶39.) According to Plaintiff, the DME contractors' "reasoning is completely flawed." (Id.) Plaintiff further alleges that "several medical opinions from nationally respected wound care experts" support its criticisms of the DME contractors' reasoning. (Id.)

2.      The differences of medical opinion, as expressed by the DME contractors and opposed by Plaintiff and the referenced wound care experts, are precisely the kinds of dispute for which Congress crafted the Medicare statute's exclusive administrative and judicial review mechanism. Thus, in reconsidering an initial determination, the QIC's "panel" must have sufficient medical expertise and knowledge of the Medicare program, which will enable the QIC to review and address the conflicting medical opinions regarding the matters raised in the Complaint. 42 C.F.R. § 405.968(c)(1). If Plaintiff were dissatisfied with the QIC's reconsideration, it could proceed to a full-blown evidentiary hearing before an ALJ who would further assess and address the conflicting medical opinions. Id. at §§ 405.1000, 405.1018, 405.1036. Indeed, Plaintiff alleges that the DME PSC Medical Directors provided similar testimony in many ALJ hearings regarding medical necessity issues. (Compl. at ¶ 23.) As for the conflicting medical opinions presented here, they would be reflected in a final decision by the ALJ or the Medicare Appeals Council, and the final agency decision would be subject to judicial review based on the entire record of the administrative proceedings. 42 U.S.C. §§ 405(g), 1395ff(b)(1)(A); 42 C.F.R. §§ 405.1042, 405.1048, 405.1130, 405.1136.

Requiring Plaintiff to abide by the full administrative appeals process would guard

-29-

against premature interference with agency processes, and give the agency an opportunity to correct its own errors. Salfi, 422 U.S. at 765. As exemplified by the ALJs' 98% reversal rate on Plaintiff's claims denied for lack of medical necessity, (Compl. at 22), the supplier may well prevail in administrative appeals of claims denied after the disputed actions of the DME contractors, which would obviate the need for judicial review. However, if Plaintiff were dissatisfied with the final decision of the ALJ or the Medicare Appeals Council, as applicable, the agency's experience and expertise would have been brought to bear on Plaintiff's claims, and there would be an adequate administrative record for purposes of judicial review. Salfi, 422 U.S. at 765. Thus, as shown previously, the Medicare statute mandates exhaustion of administrative appeals remedies as a prerequisite of federal court subject matter jurisdiction; but, requiring exhaustion of Plaintiff's claims also would clearly serve the interests of administrative finality and judicial economy.

## CONCLUSION

For the forgoing reasons, Defendant's Motion to Dismiss should be granted, and

Plaintiff's Complaint and this action should be dismissed for lack of subject matter jurisdiction.

Respectfully submitted,

_____/s/_____

JEFFREY A. TAYLOR
United States Attorney
D.C. Bar No. 498610

_____/s/_____

CHRISTOPHER B. HARWOOD
Assistant United States Attorney
United States Attorney's Office
        for the District of Columbia
555 Fourth Street, N.W.
Washington, DC 20530
(202) 307-0372

_____/s/_____

GERARD KEATING
Attorney
U.S. Department of Health and
        Human Services
Office of the General Counsel
Room 5309 Cohen Building
330 Independence Ave., S.W.
Washington, D.C. 20201
(202) 619-3377

OF COUNSEL:

THOMAS R. BARKER
Acting General Counsel
JANICE L. HOFFMAN
Associate General Counsel
MARK D. POLSTON
Deputy Associate General Counsel
        for Litigation
ANDREW S.M. TSUI
Attorney

-31-

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN MEDICAL                      )
TECHNOLOGIES, INC.,                   )
                                      )
                Plaintiff,            )
                                      )
        v.                            )        Case No. 1:08-cv-00319 (JDB)
                                      )
MICHAEL O. LEAVITT, Secretary,        )
        U.S. Department of Health     )
        and Human Services,           )
                                      )
                Defendant.            )
_____)

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS


## EXHIBIT A



*TriCenturion*
*P.O. Box 100282*
*Columbia, SC 29202-3282*

**Region A/B DME PSC Bulletin
September 2006**

THIS BULLETIN SHOULD BE SHARED WITH ALL HEALTH CARE PRACTITIONERS AND
MANAGERIAL MEMBERS OF THE PHYSICAN/SUPPLIER STAFF.  BULLETINS ARE AVAILABLE
AT NO COST FROM OUR WEB SITE AT WWW.TRICENTURION.COM

Bul20060901SURG DSG

## Surgical Dressings – Revised Coding Guidelines

The revised definitions described in this article are effective for claims with dates of service on
or after 10/01/2006.

The SADMERC and DME PSCs have identified a number of surgical dressings in which the size
of dressing slightly exceeds 16 square inches – for example, 4 ¼ x 4 ¼ .  This has resulted in
coding these products in a higher priced category.  These dressings are not functionally different
than 4 x 4 dressings and therefore a decision has been made that they should be coded using the
"16 square inches or less" codes.  A similar determination has been made for dressings that
slightly exceed 48 square inches.  If a manufacturer or supplier has a question about the correct
coding of a specific product, they should contact the SADMERC for a Coding Verification
Review.

Suppliers are reminded that, as stated in the Surgical Dressings LCD, the dressing size must be
appropriate for the size of the wound.  For wound covers, it would not be appropriate for the pad
size to be more than 2 inches greater than the dimension of the wound.  This means that a
dressing greater than 16 square inches would not be medically necessary if the wound was less
than 2 inches (5 cm) across.  A dressing greater than 48 square inches would not be medically
necessary if the wound was less than 4 inches (10 cm) across.

Small adhesive bandages (e.g., Band-Aid or similar product) are not primarily used for the
treatment of wounds addressed in the Surgical Dressings policy.  Therefore, these dressings are
noncovered under the surgical dressing benefit.  If suppliers choose to submit claims for these
products, they must  be billed with code A9270 (noncovered item or service).  If a manufacturer
or supplier has a question about the correct coding of a specific product, they should contact the
SADMERC for a Coding Verification Review.

Wound cover codes are described as either "without adhesive border" or "with adhesive border".
In order to be billed using the "with adhesive border" code, the adhesive border must be present
along all sides of the dressing and must be proportionate to the size of the dressing pad and at
least ½ inch wide.

Codes for composite dressings without adhesive border (A6200, A6201, and A6202) will be
invalid for claim submission..  One of the required features of a composite dressing is that it have
a bacterial barrier.  If a dressing has a waterproof top layer to act as a bacterial barrier but has no

THIS BULLETIN SHOULD BE SHARED WITH ALL HEALTH CARE PRACTITIONERS AND
MANAGERIAL MEMBERS OF THE PHYSICAN/SUPPLIER STAFF.  BULLETINS ARE AVAILABLE
AT NO COST FROM OUR WEB SITE AT WWW.TRICENTURION.COM

adhesive border, there is no assurance that it will prevent bacterial access to a wound when it is applied. Dressings previously coded as A6200, A6201, and A6202 will be coded as specialty absorptive dressings without adhesive border – A6251, A6252, and A6253, respectively.

Composite dressings with adhesive border (A6203, A6204, and A6205) must have (a) a physical (not chemical) bacterial barrier that is present over the entire dressing pad and extends out into the adhesive border, (b) an absorptive layer other than an alginate or other fiber-gelling dressing, foam, hydrocolloid, or hydrogel, and (c) either a semi-adherent or nonadherent property over the wound site.

A foam dressing (A6209-A6215) is a sterile, nonlinting, absorptive dressing which is made of open cell, medical grade expanded polymer. It has a nonadherent property over the wound site.

The SADMERC has received requests for Coding Verification Review for products with features that go beyond the usual scope of surgical dressings. One example, not all-inclusive, is a product that is intended to provide protection for an indwelling venous catheter. The product is a large wound cover with a slit in the middle and a plastic pouch which covers the dressing and is intended to protect the catheter. For this or other products, the SADMERC/ DME PSC coding determination will be based on the dominant component that falls under the Surgical Dressings benefit category and the intended use of the product. If it is decided that a product meets the definition of a surgical dressing, the coding determination will reflect those features which are appropriate for the management of the wound itself.

These changes will be incorporated in a future revision of the Surgical Dressings medical policy.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN MEDICAL TECHNOLOGIES, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:08-cv-00319 (JDB) |
| MICHAEL O. LEAVITT, Secretary, U.S. Department of Health and Human Services, | ) ) ) ) | |
| Defendant. | ) ) ) | |

## **ORDER**

Having considered Defendant's Motion to Dismiss, Plaintiff's opposition brief, and the

entire record herein, it is this _____ day of _____ 2008,

ORDERED that Defendant's Motion to Dismiss is hereby granted, and it is

FURTHER ORDERED that Plaintiff's Complaint and this action are hereby dismissed

for lack of subject matter jurisdiction.

_____
UNITED STATES DISTRICT JUDGE

Copy to: ECF Counsel